May Term, 1838.

BLAIR
v.
BASS.

---

BLAIR v. BASS.

If a debtor execute to his creditor an absolute deed of conveyance for real estate, with a verbal condition that the grantor shall have the right, for a specified time, to redeem by payment of the debt, the deed is but a security for the debt.

May Term,
1838.
—————
BLAIR,
v.
BASS,

The assignment of a debt so secured carries the security with it.

The debtor in such case may waive the right to redeem, and authorise the creditor to sell the land in order to obtain payment; and in case of a sale, though the debtor's design in authorising it be to defraud other creditors, a *bona fide* purchaser for value will be protected by a Court of equity.

If *A.* purchase land with *B.'s* money, and take the conveyance in his own name, he holds the land in trust for *B.;* and the land so held is liable to the debts of the *cestui que trust.*

Such a trust may be established by parol testimony, even against the answer of the trustee. In such case, however, the bill must be supported not only by two witnesses, or by one witness and corroborating circumstances, but the testimony must be clear and should be received with great caution.

It cannot be shown by parol evidence, in order to establish a trust in real estate, that the person having the legal title purchased the estate with his own money for the use of another: that would be to overturn the statute of frauds.

*Wednesday,*
*June 6.*

APPEAL from the *Morgan* Circuit Court.

SULLIVAN, J.—This was a bill in chancery filed against *Whiteley, Blair,* and *Whittington,* in the *Morgan* Circuit Court. The bill represents that on the 10th of *October,* 1833, *Nesbit & M'Cullough* obtained a judgment against *Whiteley* for the sum of 228 dollars and costs of suit;—that on the 7th of *October,* 1833, *Whiteley,* for the purpose of defrauding *Nesbit & M'Cullough,* and to avoid paying them, conveyed to *Blair* a tract of land containing 40 acres lying in *Morgan* county;—that on the 29th of *April,* 1834, a *fieri facias* was issued on the judgment of *Nesbit & M'Cullough,* by virtue of which the sheriff levied on and sold said tract of land, which was purchased by the defendant, *Whittington,* for the sum of 40 dollars and 50 cents;—that on the 20th of *October* following, an *alias fieri facias* was issued on said judgment, and the same land was again levied on and sold as the property of *Whiteley,* and the complainant became the purchaser. The bill further charges, that the conveyance from *Whiteley* to *Blair* was without consideration; that *Whittington* purchased the land at the first sale, with the knowledge of *Blair,* for *Whiteley's* use, and with *Whiteley's* money, and afterwards, at the request of *Whiteley* and without receiving any consideration therefor, conveyed the land to *Blair,* and that the same is held by him for *Whiteley's* use; that *Whiteley* has remained in possession of the land; and that *Whiteley, Whittington,* and *Blair,* had combined to defraud *Nesbit & M'Collough,* &c.

The bill prays that the conveyances from *Whiteley* and

*Whittington* to *Blair* may be declared fraudulent and void, and that *Blair* may be directed to convey to the complainant.

The defendants answered separately.

The answer of *Whiteley* states, that on or about the third of *January*, 1832, he became indebted to *Woodruff & Scaggins* in the sum of 300 dollars or thereabouts;—that for the purpose of securing them, he made to them an absolute deed in fee-simple for said tract of land, but with the verbal condition that the defendant might redeem the land by paying the debt on or before the 25th of *December* next following, and that if he did not so redeem it, *Woodruff & Scaggins* might sell the land for the best price they could get, and apply the proceeds to the payment of the debt;—that on the 31st of *January*, 1833, he had reduced the debt by various payments, to 186 dollars and 40 cents, for which amount he then gave his notes; that he failed to pay the residue, and *Woodruff & Scaggins* were about to sell the land for the sum of 150 dollars, when *Blair* proposed to pay the debt, for the land, provided it did not exceed 200 dollars;—that *Joab Woodruff*, who had become the assignee of said claim, agreed to let *Blair* have the land if he would pay the debt due from the defendant to *Woodruff*, and *Blair* thereupon executed his notes to *Woodruff* for the amount due;—that the deed from respondent to *Woodruff & Scaggins* had not been recorded, and it was proposed that said deed should be delivered up to be cancelled, and that the defendant should convey directly to *Blair*, all of which was done accordingly;—that he had no interest in the contract between *Woodruff* and *Blair*, further than to have his debt to *Woodruff* paid;—and that he never did pay any part of the sum assumed to be paid by *Blair* to *Woodruff*. He admits the judgment in favour of *Nesbit & M'Cullough*, the issuing of the executions, and that he procured *Whittington* to purchase the land at the first sale, and furnished him with 28 dollars, that being all the money he could raise, to enable him to make the payment;—that his object was to procure a good title to *Blair* for the land, and save himself from a suit on the covenants in his deed;—and that he employed *Whittington* to bid without the knowledge or consent of *Blair*. He admits that he is in possession of the dwelling-house and two or three acres of the land, but says he holds as tenant of *Blair*, paying rent, &c.

*Blair* in his answer admits, that he knew *Whiteley* was in

debt to *Nesbit & M'Cullough* at the time he bought the land, and that a suit was pending in their favour against him;—that he knew of the conveyance by *Whiteley* to *Woodruff & Scaggins*, and that *Woodruff*, the assignee, was about to sell the land, and he proposed to pay the debt of *Whiteley* to *Woodruff* for the land if it did not exceed 200 dollars;—that he accordingly contracted for said land with *Joab Woodruff* at and for the sum of 176 dollars and 90 cents, that being the amount then due from *Whiteley*, and gave his notes with 10 *per cent.* interest, all of which he has paid except about 35 dollars;—that the deed from *Whiteley* to *Woodruff & Scaggins* was cancelled, and *Whiteley* made respondent a deed for the land. He denies that *Whiteley* furnished any part of the money either directly or indirectly to pay *Woodruff*. He avers that the deed from *Whiteley* to him was made in consideration of defendant's paying *Woodruff* the debt that *Whiteley* owed him;—that he did not take or receive said deed to enable *Whiteley* to defraud *Nesbit & M'Cullough*, &c. He says that *Whiteley* remains in possession of the dwelling-house and three acres of cleared land, but as a tenant paying rent.

The answer of *Whittington* as to the purchase of the land at the first sale on execution, and the object for which he purchased it, agrees substantially with the answer of *Whiteley*.

To the foregoing answers, the complainant filed a general replication.

*Henry Hamilton*, a witness for the complainant, testified that *Whittington* bought the land at the sale on the first execution, and said that he bought it for *Whiteley;* that he heard *Whiteley*, before the sale, say that he had sold the land to *Blair*, and wished to buy it at the sale to make *Blair* secure. The witness never heard *Blair* say any thing about it. He has heard *Whiteley* say, that the debt to *Nesbit & M'Cullough* was unjust, and he would sacrifice every cent he had before he would pay it. On the morning of the sale the witness lent some money to *Whiteley*, and thinks he saw the same money in the hands of *Whittington* shortly before the sale.

*Charles Ross* testified, that in the year 1834, a quantity of corn which *Whiteley* owned, was sold on execution, and the witness bought it for *Whiteley*, and with his money. He supposes it was the same execution on which the land was first sold.

*James Murphy* attested the deed from *Whiteley* to *Blair*, and the notes from *Blair* to *Woodruff*, amounting to about 175 dollars. The deed and the notes were executed at the same time.

*Isaac Holeman* testified that in the spring of 1833, he offered to *Woodruff* 250 dollars for the land in controversy, which the latter refused to take, but said if *Whiteley* did not soon pay him, he would sell the land.

*David Miller* testified, that about a week after the judgment in favour of *Nesbit & M'Cullough* was rendered against *Whiteley*, he heard *Blair* say that he was afraid he had brought himself into trouble; that if he had not thought that *Whiteley* would have gained the suit, he would not have bought the land; that it was in the hands of *Woodruff*, and that *Whiteley* would lose it unless somebody would buy it. He further said, that he had bought the land of *Woodruff* before *Whiteley* knew any thing about it. The witness charged *Blair* with paying for the land with *Whiteley's* money, but *Blair* denied it.

*William H. Craig* testified that he was sheriff of *Morgan* county at the time of the sale to *Whittington*, that a part of the purchase-money was paid by *Blair*, and that *Blair* paid *Whittington* one dollar and 50 cents for his services.

*Joab Woodruff*, the assignee of *Woodruff & Scaggins*, testified to the contract between *Blair* and himself for the land as stated in the defendants' answers. He has heard *Whiteley* say that he would not pay *Nesbit & M'Cullough* if he could help it, because the demand was unjust, but never heard *Blair* say any thing about it. He says that *Blair* bought the land and gave his notes for the purchase-money, all of which he has paid except about 35 dollars.

Other depositions were read by the complainant, to prove that *Whiteley* was indebted to other persons at the time of the conveyance to *Blair;* and that after the conveyance, *Whiteley* remained in possession of the land.

On the part of the defendant, *James M'Intyre* and others testified to the sale of the land by *Whiteley* to *Woodruff & Scaggins*, and to the sale from *Joab Woodruff* to *Blair*. They also proved the contract between *Blair* and *Whiteley*, for the rent of that part of the premises occupied by *Whiteley;* that *Whiteley* occupied it as the tenant of *Blair*, and paid rent for it; that *Blair* lived about one mile and a half from the

May Term,
1838.

BLAIR
v.
BASS.

May Term,
1838.

BLAIR
v.
BASS.

land, and cultivated that part of it not occupied by *Whiteley.*

The Circuit Court on the final hearing of the cause, decreed that the deed from *Whiteley* to *Blair* was fraudulent, as made to defeat the creditors of *Whiteley*, and held the same to be null and void, &c. From that decree *Blair* has appealed to this Court.

If the money paid by *Blair* to *Woodruff* was the money of *Whiteley*, there would be but little room for doubt about this case. It is not denied but that the purchase made by *Whittington* was at the request of *Whiteley*, and the greater part of the purchase-money was furnished by him. Of this part of the transaction, *Blair* was informed before he received a conveyance from *Whittington.*

The conveyance from *Whiteley* to *Woodruff & Scaggins* was a fair and *bona fide* transaction. This, all the parties admit. The deed, however, though absolute in terms, was but a security, and the assignment of the debt from *Woodruff & Scaggins* to *Joab Woodruff* carried the security with it. *Whiteley* might have redeemed the land at any time, even in the hands of the assignee, by paying the debt which it was given to secure. He might also, we suppose, waive that right, and authorise the mortgagee to sell the land either at public or private sale, and raise the money due him. In that case, even if his object was to hinder or delay *Nesbit & M'Cullough,*—the purchaser, if he bought without fraud, would be entitled to the protection of a Court of equity; for however fraudulent the intention of *Whiteley* might be, a *bona fide* purchaser for a valuable consideration is protected. *Roberts* v. *Anderson,* 3 J. C. R. 371.—*Hendricks* v. *Robinson,* 2 *id.* 283.

In this case, the complainant contends that the conveyance from *Whiteley* to *Blair,* and the purchase by *Whittington* at the first sale, and his conveyance to *Blair,* were all fraudulent as being made for the purpose of defrauding *Whiteley's* creditors, *Nesbit & M'Cullough.*

It should be remembered that *Woodruff* was also a creditor, and that the transactions of the seventh of *October,* 1833, were had with special reference to the payment of the debt due to him, and being authorised to sell the land, if *Blair* bought it from him in good faith, and paid his own money for it, the fact of his receiving a conveyance from *Whiteley* cannot, we think,

affect his right, because it was a part of the contract with *Woodruff* while the title remained in him, that the conveyance should be so made.

The allegations in the bill, that *Blair* paid the debt to *Woodruff* with *Whiteley's* money, and that he took the conveyance of the land for *Whiteley's* use and benefit, are positively denied in the answers of *Whiteley* and *Blair*. It is true, that a trust may be established by parol testimony against the answer of a defendant. In such case, the bill must be supported not only by two witnesses, or by one witness and corroborating circumstances, but the testimony must be clear, and even then should be received with great caution. 1 Johns, C. R. 582. To raise the trust, it must be proved that *Blair* paid *Whiteley's* money or a part of it for the land. The complainant will not be permitted to show for that purpose, by parol testimony, that *Blair* bought the land with his own money for *Whiteley's* use, " because that would be to overturn the statute of frauds."

This case, then, must rest upon the answer to the simple question, whose money paid the debt to *Woodruff?* If the purchase was made from *Woodruff* with *Whiteley's* money, or if *Whiteley* paid the notes of *Blair* to *Woodruff*, the deed to *Blair* was voluntary; he is the trustee of *Whiteley;* and the land is liable in his hands to the debts of the *cestui que trust*.

On a careful examination of the testimony, we think it is not sufficient to sustain the bill. The money paid to *Woodruff* was paid by *Blair*, and there is no proof that any part of it was furnished by *Whiteley*. All the suspicion that is thrown about the case, arises from the anxiety manifested by *Whiteley* that *Blair* should get the land, and from his declarations that the claim of *Nesbit & M'Cullough* was unjust, and that he would not pay it if he could help it. But we have no evidence that *Blair* was privy to the designs of *Whiteley;* and if we had, having paid *Whiteley's* debt to *Woodruff*, he stands in the light of a creditor, and is in that point of view entitled to the protection of a Court of equity. *Hendricks* v. *Robinson*, above cited. Indeed, the testimony as we view it, goes rather to establish the fact, that *Blair* purchased the land for his own use and paid for it with his own money. The poverty of *Whiteley*, the frequent declarations of *Blair* which are made testimony in the case by the complainant, together with the proof of payments made by *Blair* to *Woodruff*, concur to satisfy us of that fact.

69

There is no proof that *Whiteley*, after the conveyance to *Blair*, remained in possession of the land enjoying the rents and profits, as alleged in the complainant's bill. On the contrary, the testimony is that he rented a small parcel of the ground from *Blair* at a certain yearly rent, and has occupied that part of it as the tenant of *Blair*.

The purchase by *Whittington* and his conveyance to *Blair* cannot affect this case. If *Blair* was a *bona fide* purchaser of the land, as we think he was, before the sale to *Whittington*, his title cannot be affected by that sale, and the conveyance from *Whittington* can neither weaken nor strengthen his title.

*Per Curiam.*—The decree is reversed with costs. Cause remanded with directions to the Circuit Court to dismiss the bill, &c.

*H. Brown* and *J. Eccles*, for the appellant.
*P. Sweetser*, for the appellee.