## McCarron vs. Cassidy.

The true doctrine and rule, as to the competency of the vendor or grantor to give evidence in a controversy affecting the property conveyed, are, that the warrantor of property, whether real or personal, is, in general, incompetent as a witness for his vendee or grantee, in an action concerning the title to such property (*Arnold et al. vs. McNeill* , 17 *Ark* )

The testimony of a co-defendant in a chancery cause, may be taken under special leave and order of Court for that purpose (*Pryor et al. vs. Ryburn*, 16 *Ark.* 692.)

An objection to the competency of a witness will not be allowed if taken, for the first time, in this Court on appeal—such objection should be made at the hearing in the Court below.

Parol testimony is admissible to prove that a deed, absolute on its face, was intended as a mortgage, and as a security for a loan or debt, (2 *Eng.* 505; 1 *Ark.* 119.)

A mortgagee in possession, without special authority, will only be allowed for such improvements as are absolutely necessary for the support of the property, and to keep it from waste and damage.

*Appeal from the Circuit Court of Sebastian county in Chancery.*

The Hon. Felix J. Batson, Circuit Judge.

Fowler for the appellant.

Ben. T. Deval and William Walker for appellee.

That parol testimony is admissible to show that a deed, absolute upon its face, was intended as a mortgage, is no longer an open question. 4 *John. Ch. Rep.*, 167; 4 *Kent* 141, *A. seq.;* 3 *Dana.* 276; 1 *How. S. C. R.*, 118; *Russell vs. Southard et al.* 12 *How.* 189; 4 *Blackf.*, 539; *American Notes to Thornbrough vs. Baker, and Howard vs. Harris, Pt. 2d, vol.* 2, *Lead. cases in equity,* 432, *et seq.; Blackmore vs. Burnside,* 2 *Eng.* 505; *Johnson Esq. vs. Clark,* 5 *Ark.; Scott, White & Co. vs. Cunningham,* 13 *Ark.*

Whenever it is made to appear, by any means of proof, that a deed was intended as a security for a debt due by the grantor, payment of the debt will entitle the debtor to a conveyance of the estate. *Morris vs. Ninon*, 1, *How.* 118; *Taylor vs. Luther*, 2 *Sumn.*, 228; *Roach vs. Cosine*, 9 *Wend.* 227; *Walton vs. Crowley*, 14 *Wend.* 63; *Stee vs. The Manhattan Co.*, 1 *Paige* 48.

A mortgagee must account for rents and profits of the mortgaged estate, from the time he takes possession. *Smart vs. Hunt*, 1 *Vermont* 418; *Wheelock vs. Robey*, 15 *Sim.* 265.

A mortgagee will be allowed for such repairs as are necessary for the support of the property; but not for improvements made to increase the value of the property, without the consent of the mortgagor. *Saudon vs. Hooper*, 6 *Bean* 246; *Nusom vs. Clarkson*, 4 *Hare* 97; *Moore vs. Caber*, 1 *J. C. R.* 385; 1 *Hoffman R.* 352.

A party against whom no decree can be taken, is a competent witness and his testimony can be taken by order of Court. Sparks' interest; if any, was balanced. *Vide Cowan & Hill's Phil. Ev., note* 77.

Mr. Justice HANLY delivered the opinion of the Court.

This was a bill filed by the appellee, against the appellant and one Mitchell Sparks, in the Sebastian Circuit Court, on the 17th October, 1851, alleging, as far as it is material to notice, that on the 2d January, 1847, he was seized and possessed of two certain lots in the town of Fort Smith, on which was a large two story brick house, and other buildings and valuable improvements: and being embarrassed with debts, he applied to the defendant Sparks, to advance to him enough money to pay off his debts, and to defray his expenses to Texas, whither he was about to leave, and offered him the lots and premises as a security for such proposed advances, to which Sparks consented; and it was thereupon agreed that Sparks should pay off such indebtedness, estimated at about $1,500, and advance enough more to bear his expenses to Texas, and that the appellee should convey the lots and premises to Sparks, in fee, with the express understanding that appellee might redeem them, *within*

*three years next thereafter*, by repayment of the amount to be
advanced with ten per cent. interest, in which event, by the
same understanding, Sparks was to reconvey the lots and
premises to appellee, in fee; but if he should fail to redeem
within the specified time, that Sparks should sell the lots and
premises, at public auction, and reimburse himself, and the resi-
due, if any, to pay over to appellee; that in pursuance of this
agreement and understanding appellee executed and delivered
an absolute deed in fee simple, to defendant Sparks, bearing
date as above, 2d January, 1847, which was duly acknowledged
and afterwards properly recorded; that after this had been done,
appellee and Sparks disagreed as to the amount to be advanced
for the expenses to Texas; and then, appellee applied to the
appellant to make such advances and offered him the lots and
premises as a security therefor, and appellant agreed that he
would assume and pay all appellee's debts, and advance money
for his expenses to Texas, if Sparks would convey to him the
lots in fee, with the express understanding between the appel-
lant and appellee, that the lots so to be conveyed should *remain*
subject to redemption by appellee, on repayment of such ad-
vances to be made, and that *whenever* appellee should refund
the same, with ten per cent. interest, appellant was to reconvey
the lots, in fee, to appellee; that in pursuance of such agree-
ment and understanding, Sparks, by deed of the 5th January,
1847, conveyed the lots and premises, in fee, to appellant, and
that the deed therefor was duly acknowledged and recorded.
The bill further charges that the complainant therein, appellee,
did not remember all the debts that appellant was to pay for
him, but that they were mentioned at the time, and did not ex-
ceed $1,500: that among them was one of $651 12 cents, in-
cluding interest, due to Sparks & Miller, co-partners, the pay-
ment of which was secured to them by mortgage on the same
lots; that among the debts to be paid by the appellant, under
the agreement as before stated, was one of $200, due Rogers,
for which Sparks was responsible as guarantor; that there was
another of $30, due to appellant, etc.—that appellant had paid

the debt of $200 to Rogers—advanced $75 for expenses to Texas. The bill further charges that the appellant added the two sums of $75 and $30, advanced and due as above, and required appellee to give his note for the aggregate amount thereof, which was done at the same time that Sparks executed and delivered the deed to him for the lots and premises, as before stated. It is further charged in the bill, that appellant agreed with appellee, at the time, and before the conveyance from Sparks to him was made, that he would rent out the houses and premises conveyed, on the best possible terms, and apply the proceeds to the extinguishment of such indebtedness to be incurred by appellee on account of the advances to be made for him by appellant; that notwithstanding this agreement on his part, he had entered into the possession of the lots and premises, immediately after the conveyance to him, and that they had remained in his possession ever since, he enjoying the rents and profits thereof. Appellee further charges that, being desirous to redeem the lots and premises from appellant under the agreement, as above, he had requested him to state an account of the amount of the moneys advanced for him, and the rents and profits of the houses and lots, and offered to pay him the balance that might be due, when it should be ascertained and determined and demanded possession of the lots and premises, which appellant did and would not accede to. There are special interrogatories propounded in the bill to the appellant, among them the appellant is required to discover the true consideration of said deed, what was the real meaning, agreement and intention of the parties to said deed, at the time it was executed, what was the real consideration between Sparks and appellant, and whether or not it was not the intention that appellee might redeem, and whether the deed from Sparks to appellant was not intended as a mortgage, etc. There was a prayer for an account of money paid, rents, etc., and for payment, redemption, possession, etc.

Sparks answered, admitting the whole bill to be substantially true.

Appellant answered, admitting the title originally in appellee, and his embarrassment with debts; but positively denies, upon information of appellee himself, that any such agreement was entered into with Sparks, as is set up in the bill, and states, upon the same authority, that the sale and conveyance to Sparks were *absolute*, and the consideration was, that appellant was to pay off appellee's debts, amounting to $2,500, and by a subsequent agreement betweem them, made on the 5th January, 1847, Sparks conveyed the lots to appellant, absolutely, by deed of general warrantee, in consideration of $2,200, the then supposed indebtedness of appellee, to be paid by appellant, and denies positively that he made such advances, and took the conveyance as a security for the repayment, and states that appellant paid appellee's debts, specifying them, to the amount of $2,466 15 cents, and denies that any part of the consideration of the purchase, was an advance to enable appellee to reach Texas. Admits that after the purchase and sale of the lots were completed, he loaned appellee a small sum to bear his expenses, for which, added to another small debt, appellee gave him his note, in amount $222 91, which he then held. Appellant denies, positively, that he held the lots subject to redemption, or that they were to be reconveyed on the advance made by him being refunded with interest at ten per cent. thereon. He admits, however, that, outside of the contract, he told appellee that if he would repay the money, with ten per cent. interest, and pay him for the amount expended for improvements on said lots, placed there by himself, and ten per cent. interest on that amount from the time of its expenditure, that he would *re-sell* to him the lots, and avers a readiness and willingness to do so still. The answer of appellant further states, that $1,500 was as much as the lots were worth when he purchased them: that he only agreed to give so large a sum for them to save a part of the debt due to him from appellee. Denies that he ever agreed to rent out the premises, and charges that, after the purchase made by him, he added improvements and erected buildings on the lots, to the value of about $5,000, and in the event

of the conveyance being declared a mortgage, claims to be re-
imbursed therefor, as well as for the purchase money paid, with
interest on each at ten per cent. per annum from the time of
their respective advances, and also payment of the said note for
$222 91, which he charges to be still due: admits that appellee
applied to redeem the lots and premises, and tendered, or of-
fered to pay him $2,000, which he refused, and he denied all
fraud, etc.

The deed from appellee to Sparks is exhibited with the orig-
inal bill, and purports to have been duly and properly acknow-
ledged and recorded, and is an unconditional deed, in fee
simple.

A general replication was filed to the answer of appellant,
and a motion was at the same time interposed by the appellee,
for leave to examine the defendant, Sparks, as a witness in his
behalf, which leave was granted. The appellant, after the
depositions of the defendant, Sparks, and several others, had
been published, moved the Court to suppress such depositions.
Afterwards, an amended bill was filed by the appellee, which
was answered and replied to, and by consent the cause was set
for hearing on bill, answers, etc., " and on exhibits and deposi-
tions, as between complainant and defendant, McCarron," with
leave to take depositions. There apears to have been no action
on the part of the Court, upon the motion of appellant to sup-
press the depositions of Sparks and others; but from all that ap-
pears in the transcript, that motion was either abandoned or
waived by the party who made it.

The amended bill states, in substance, that when Sparks con-
veyed to appellant, the premises were worth $5,000, and at
least five times the amount of the debts assumed by appellant
for appellee; that at the time of the conveyance by appellee to
Sparks, appellee was keeping a tavern and coffee-house in the
brick building upon the lots in question, and had furniture, etc.,
therein, to the value of $1,000, all belonging to him; which, it
was agreed between appellant and appellee, that the former
should take and sell, and apply the proceeds to pay the debts

of the latter, which it is averred he did not do, but entered on the premises, and carried on the same business, and used the furniture, and has never accounted for it at all. The amended bill further charges, that when the appellee made the foregoing arrangements, his mind was impaired by drink to such an extent, that he had *delirium tremens*, his health greatly impaired, and that no one supposed he would ever return from Texas; that he was totally incompetent to attend to his business; that appellant often expressed his belief that he would never live to return, and that he should, in that event, hold the premises, absolutely; that during the greater part of the time that appellant has had the premises, he has rented them out and received as rent per annum, from $800 to $1,500; that he, appellee, and appellant and Sparks were old friends, particularly appellant and appellee:—that appellant persuaded him, appellee, to go to Texas, and gave as a reason for taking an absolute deed for the lots and premises, that it would be necessary to enable him to sell them, if it should be thought advisable or necessary for him to do so; that appellant has sued on the note for $222 91, obtained judgment against appellee and certain garnishees therein, and has collected the whole amount from such garnishees, as appears of record; that appellant has, since the execution of the deed, written several letters to him, appellee, expressing his willingness to reconvey the lots and premises, and that he, appellee, left Fort Smith immediately after the deed to appellant was made, and did not return until about the time of filing his bill.

The answer of appellant to the amended bill, denies that the premises were worth $5,000; says that they would not have sold, to any one but himself, for more than $1,500; that appellee had endeavored to sell them, to different persons for less than the price appellant gave him; says it is false, that when Sparks conveyed to him, appellant, appellee was keeping a tavern and coffee-house in the building; but avers that appellee had sold the premises to Sparks, and had left for Texas two days before he, appellant, bought the premises, and received

the conveyance of the same from Sparks; that, after appellee had left, he, appellant, learned that he had sold out and gone, without making any provision for paying his notes to appellant, amounting to $1,005 60, and thereupon, he went after him, induced him to return to Fort Smith, and then the conveyance from Sparks to him, appellant, was made, and that he immediately gave up to appellee his notes, amounting to $1,005 60, as a part of the consideration for the deed from Sparks. It denies that appellant received, or agreed to sell any furniture whatever, and it denies, moreover, every charge in the amended bill in regard to the health of mind or body of appellee being impaired, and his incompetency to transact business. It also denies that appellant expressed the opinion that appellee would not live to return, and that he had rented the premises for from $800 to $1,500 per annum, but admits that he rented out part of them, at times, for small amounts, and avers that the house could not have been rented, one year with another, for more than $30 per month: denies that he and appellee were bosom friends, or that the latter consulted him about his business, or that he induced him to go to Texas: denies giving the reason alleged for making the deed, absolute on its face: admits collecting the amount of appellee's note for $222 91: denies writing letters to appellee, expressing his willingness to reconvey the property, but admits he may have written to him that he would re-sell the property, if he would pay all advances, improvements, etc. etc., and avers that appellee was frequently at the house prior to October 17th, 1851, and knew and approved of the improvements that were making thereon.

Upon the hearing, the Court found the facts to be as stated in the bill and amendment, and that the deed to appellant was a mortgage, and appellee entitled to redeem, by repayment of the amounts advanced, with interest at ten per cent.: and on taking an account, the Court found the amount due appellant for advances and interest, to be $1,500 09, and the rents and profits to amount to $2,745, and that the difference, $1,244 91, was due from appellant to appellee, and so decreed a reconveyance and payment of such balance.

The testimony, upon which the decree is predicated, is, in substance, as follows:

The defendant Sparks was positive that the transaction between himself and appellee, was a mortgage: that he was to pay appellee's debts, amounting to $1,329 61, and advance him money to go to Texas, rent out the property, and repay himself, and if appellee did not redeem the property in three years, he was to sell it, pay the debts, and the residue pay over to appellee. He was as equally positive, that appellant sought to have the same arrangement made with himself, in the place of him, Sparks: that appellee agreed to this because appellant would advance to him more money to go away with, and a longer time to redeem in; that when the deed was made, appellant promised to take good care of the property, to rent it out to the best advantage, and when appellee should refund him the money with ten per cent. interest, he should have the property, even if it were ten years afterwards: that the consideration expressed in the deed from himself to appellant, was nominal, and no money really passed when the deed was made, and that the consideration expressed in the deed to him, Sparks, was the estimated amount of all appellee's debts.

*Samuel B. Stephens*, sheriff of Sebastian county, testified that, in October, 1851, appellant told him that he had a deed for the property, but that he had said to appellee if he would pay the amount he had expended with ten per cent interest, he could have the property; but that, at the time he said this, he did not expect the d—d fellow would ever come back, or be seen again. Appellee had been absent from Fort Smith for five or six years, until a few days before this suit was commenced.

*Elias Rector* proved that, in October, 1851, appellee offered to pay appellant, $2,200 or $2,300 in gold, as the money due him with interest. Appellant said, that all he wanted was what the property had cost him, and that he had built a fine house with other improvements cheaper than appellee could himself have done,—saying, " pay me for them and take them: I am anxious to get rid of them and get my money for them."

*Gustavus A. Meyer* testified, that the property was worth

$5,000, on the 1st January, 1847, and would have rented afterwards at $600 a year.

*C. B. Johnson* and *R. M. Johnson* testified to about the same facts deposed to by Meyer.

*Willard Ayres* testified, that soon after appellee went to Texas, appellant said that he had his property, and when he returned, and paid him back his money paid out for him, he would get his property back.

*S. H. Montgomery* proved that appellant had, a year or two before, asked $1,250 rent per annum for the property.

*John J. Johnson* testified, that, a short time after appellee left for Texas, appellant said that he had loaned him money to go off on, and was to pay debts for him, not mentioning what debts; and that whenever appellee returned and paid back his money, the property was to be his; that the property, when appellant took it, was worth from $4,000 to $5,000; that it had been the general understanding in Fort Smith, that the property was subject to be redeemed by appellee; that he, appellee, was intimate with appellant, was embarrassed and dissipated, and more under the influence of Sparks and appellant than any body else—they being his confidential advisers.

*William M. Domrell* testified that in November, 1851, he applied to appellant to rent the premises, offering $800 a year, but appellant would not take less than $1,200: this was for the building erected by appellee and the ten-pin alley erected by appellant, the latter of which cost some $75 to $100.

*William H. Norton* testified as to renting part of the property, saying that in 1851 and 1852, the original premises would have rented for $350 to $400 per annum. The improvements made by appellant were an addition at the east end of the main building, two brick shed-rooms in the rear of the main building, with a hall between from 4 to 6 feet wide, a nine-pin alley, an addition to the old kitchen, a frame smoke-house, a ware-house and a privy.

*John Gardner*, a brick mason, estimated the improvements in brick and stone, made by appellant, to be worth $876. It was

measured, and so estimated by himself, and *E. Herring*, who testified to the same.

*Thomas Vernon*, a carpenter, had measured and estimated all the wood work, including locks and all hard-ware used, and valued all at $1,400: and the whole premises, as they stood then, in July, 1854, to be worth $5,000.

*Dennis Trammell* proved that appellee was dissipated and addicted to hard drink: that he and appellant were as intimate as brothers: that appellee was a spend-thrift and prodigal, and appellant prudent and saving, and a shrewd business man. In 1848, appellant sent appellee's note to Texas, by this witness, for collection: appellee refused to pay it, saying, appellant held all his property in Fort Smith. On his (witness) return, he gave back the note to appellant, who became very angry, and said, he wished appellee would come back and pay him his money and take his property. He said, also, that he had put a great deal more improvements on the property, than he had agreed to do: that he was only to have finished the kitchen, and a few other little jobs. Witness told him he might lose the premises. Appellant said appellee would never have money enough to pay him. He showed witness his bills for improvements; which amounted to a considerable sum. Appellee's furniture was in the house, when appellant took possession, and he saw part of it, afterwards, in appellant's possession.

*George S. Bernie* said that appellee built, in 1845, on the lots, a two story brick house, a one story frame house, a small stable, and a small kitchen, and also dug a well. He kept a tavern and coffee-house there until he removed to Texas, in 1847. He was an imprudent man; and addicted to hard drink; he and appellant were very intimate, and he was under the influence of appellant, who seemed to be his confidential adviser. He was embarrassed when he went to Texas. Thinks the property was worth, in January, 1847, from *three to three thousand five hundred dollers*, and would have rented in 1847, and thence to 1850, both years inclusive, for from $300 to $350 per annum—in 1851 and 1852, for from $400 to $500. Rents have declined about 50 per cent. in Fort Smith since 1852. Appellee did not

return from Texas until the fall of the year 1851. Soon after appellee left, and owing witness a sum of money, he, witness, called on appellant to pay it, and he refused, and appellee paid it after his return. It was over $100. The premises would have sold in 1847 for about $3,000 in cash. That was their cash value. He describes the improvements of appellant, and says that, without them, the property would have rented in 1847 for $300 to $350, and in 1853 for about the same amount; in January, 1854, for from $275 to $300: would have sold in 1851 for $4,000 to $5,000; or with all the appellant's improvements, for from $6,000 to $7,000.

*Asa Clark* testified to about the same effect as the last witness, and also, that after appellee left for Texas, appellant still had all the bar furniture in the bar, and continued to keep and use it.

*Albert Dunlap* rented two rooms on the ground floor of the house in question, in 1853, at $15 per month, and afterwards, occupied the frame building at $100 per annum: says that *J. W. Vandever* rented the frame building in 1850, at $10 per month, for two months. *John N. Slosson* rented it in 1852, at $12 per month. *John H. Lane* rented three rooms and the alley at $30 per month, in 1852. *John King* testified that in 1852, a literary society rented one room up stairs at $10 per month.

*John W. McDonald* testified that, in 1853, appellant asked $650 per annum for the brick house, kitchen and stable, he, witness, occupying two rooms in the addition and the one story frame house.

*Tapley C. Belling, Benj. F. Doole and Joseph M. Halt*, for the defendant, measured and estimated the carpenter's work and materials, without adding up the items, or stating the aggregate amount. *William L. Hundfield* valued the painting alone at $600.

*John H. T. Main*, on the same side, testified that in the fall of 1846, appellee offered him the property for $1,500: seemed anxious to sell; said he was in debt, and wished to sell to pay his debts, and leave the country. There was no demand for property in Fort Smith then. It had no real cash value. Does

not think any body else would have given as much for the property as appellant did. Appellee was a hard drinker, but his mind was not impaired. Never saw him drunk or staggering. When appellee offered to sell to witness, he said he wanted to sell for enough to pay his debts, and have one or two hundred dollars left to take him away.

*Joseph Bennett* thought the property worth, in January, 1847, about $2,000. Property in Fort Smith was then very low.

*Michael Manning* thinks that when appellant got the property, it would not have rented for more than $10 per month. There was no demand for real property in Fort Smith, and it had no value. He does not think any one would have given more than from $1,200 to $1,500 for the property. Thinks the improvements made by appellee cost from $1,500 to $1,700. When appellee left the county, the lots would have been a dull sale at any price. Appellant and appellee were both Irishmen, and as intimate as brothers.

*John P. Smith*, a tinner, states the value of the work done for appellant at $108 62.

*John Kirchherr* thinks the painting worth $600, including glazing and papering.

*John H. T. Main* thinks the property was worth, in January, 1857, about $2,000 , though it would not have sold for that, as property was low. The lots without improvements were worth about $400.

The appellant took a bill of exceptions to the decision of the Court, allowing parol testimony to be used to prove that the deed, though absolute on its face, was meant as a mortgage.

The appellant complains, in this Court, of the entire decree, as being unjust in every particular, and, with great earnestness, insists that it is unwarranted under the law and the evidence.

Before proceeding to determine the main question involved, we will notice and dispose of two incidental questions, to which our attention has been called by the counsel for the appellant: that is to say, 1st. Was the defendant, Sparks, a competent witness for the appellee, under the circumstances shown from the case as stated? and *secondly*, may a deed absolute on its

face be shown, by parol proof, to be a mortgage, or security for a loan.

1· The point involved in this question, is one of interest, and not without difficulty and embarassment. Of interest, for the reason that it may be regarded as one of novelty, it never having been passed upon in this State, to the extent to which it is involved in the case under consideration, and of embarrassment, for the reason that there seems to be a conflict and diversity in the adjudications to which we have been referred, and which have fallen under our notice in the course of our researches upon the subject. It is insisted, by the counsel for the appellant, that the deposition of Sparks should have been excluded, upon the principle that no man should be heard, as a witness or otherwise, to impeach or invalidate his own deed, or his own title, after he has made a conveyance to a third person; and diverse authorities and adjudications are invoked in support of this position, which we have carefully examined and considered, and which we do not find to sustain the position contended for, to the extent that counsel would have us to apply it in this case. In *Arnold vs. McNeill*, determined at the last January term, this Court, by *English Ch. J.*, say: „" It had been held, at one time, in England that no party, who has signed a deed, shall ever be permitted to give testimony to invalidate the instrument which he has so signed. But this doctrine was overruled *there*, and our decisions favor the competency of the witness," citing *Tucker vs. Wilamowicz*, 3 *Eng. R.* 157, and cases there cited; *Caldwell Exr. vs. McVicar*, 7 *Eng. R.* 750; *Knight vs. Packard*, 3 *McCord's R.* 71; 1 *Serg. & Rawle Rep.* 102; 2 *Binn.* 165.

The true doctrine and rule on the subject may be thus stated. The warrantor of property, whether real or personal, which is in controversy, is, in general, incompetent as a witness for his vendee or grantee, in an action concerning the title to such property. See 1 *Greenl. Ev. sec.* 397, *p.* 505. *Searle vt. Searle* 2 *Rolle Abr.* 685. 21 *Vin. Abr*, *tit. trial. G. Pl.* 1. *Steers vs. Carwidine* 8 *C. & P.* 570.

The rule, as insisted upon by the counsel for the appellant, is the one laid down by Lord Mansfield in *Walter vs. Shelley*, 1

*T. R.* 296; which was first doubted in *Bent vs. Barker*, 3 *T. R.* 27, and, afterwards, in *Jordanc vs. Lashbrooke*, 7 *T, R.* 601, was directly attacked, and completely overthrown, though defended with much zeal and no little feeling by Mr. JUSTICE ASHURST. The question has been put completely at rest in this State, by the authority of the cases already quoted. In the case at bar, the witness, Sparks, was proposed by the appellee, who did not stand in the relation to him of vendee or grantee in respect to the property in controversy in this suit, so as to bring him within the letter, or spirit of the rule, which we have stated. His interest, if he had any in the suit, was certainly hostile to that of the appellee, and coincided with that of the appellant, against whom he was offered as a witness. The appellant cannot be heard to complain on account of the testimony of one whose interest may be supposed to bias and warp his leaning in his favor. If the appellee is satisfied to trust to his honesty, candor and truthfulness, we know of no one, under the circumstances, entitled to complain. *See* 1 *Greenleaf's Evidence, ubi. sup.; Gresley's Eq. Ev.* 249.

We have been considering the question at hand, as if it had been really and properly presented for our determination, in the case before us. But such is not the case. It will be observed from the statement, which we have given, that the deposition of Sparks was taken under special leave and order of the Court below, and in strict conformity to the rule laid down in *Pryor et al. vs. Ryburn*, 16 *Ark. R.* 692, and the authorities there cited in support of that rule. If Sparks had, really and in truth, been incompetent, for the reasons and causes assigned by the counsel in the argument of the cause in this Court, the proper time to have objected to his deposition on that account, would have been at the hearing of the cause in the Court below. See again *Pryor et al. vs. Ryburn*, as above. But on inspection of the transcript, we find no such objection urged by the counsel for the appellant in the Court below, at any stage of the proceedings. It is true that a motion was made to suppress the deposition of Sparks, but this matter seems to have been abandoned or waived, and appears never to have been acted on by

the Court. To allow an objection to the competency of a witness in this Court, for the first time, would be, virtually, to assume for this Court original jurisdiction of the question of competency. We therefore hold in this case, that, notwithstanding we have considered the competency of Spark's testimony, that question does not legitimately arise in this cause, for the reason that objections, on that account, were not made in, and passed upon by the Court below, at any time during the progress of the cause through that Court.

2. As to this question, we think there can be no doubt. That parol testimony is admissible to prove that a deed, absolute on its face, was intended as a mortgage, and as a security for a loan or debt, is no longer an open question in this State. See *Blakemore vs. Byrnside*, 2 *Eng. R.* 505; *Johnson Exr., vs. Clark*, 5 *Ark. R.* 321; *Scott, White & Co. vs Henry & Cunningham*, 13 *Ark. R.* 119.

And it may be said that such is the law, as held in most of the States of this Union, as well as the highest Courts of Great Britain. 4 *Kent's Com.* 141, *et seqr.;* 1 *J. Ch. R.* 167; 3 *Dana R.* 276; 1 *How. U. S. R.* 118; 12 *Ib.* 189; 4 *Blackf.* 539; *part* 2 *vol.* 2. *Leading cases in Equity* 432 *et scqr.;* 2 *Atkins* 90, 258; 3 *Ib.* 389; 1 *Powell on Mort.* 286.

Having disposed of the foregoing questions, we will at once proceed to the main enquiry, that is to say, is the decree rendered by the Court below warranted by the pleadings and proof considered at the hearing.

By reference to the statement, we think there can be no doubt but that the deed from Sparks to the appellant was intended to be a security, in the hands of the latter, for the advances in cash that he undertook to make for the appellee. It is equally clear, also, that the terms, on which the deed was made by Sparks to the appellant, were, that the latter was to have paid certain debts, amounting, principal and interest, to less than $1,500, for the appellee, and in addition thereto, loan him a sufficient amount to defray his expenses from Fort Smith to Texas: that appellant was to take and hold possession of the lots and premises, from the time the arrangement was made,

until such time as the appellee should repay to appellant the amount to be advanced by him as above, with interest on said sum at ten per cent. per annum; that the lots and premises, in the hands of appellant, were to have been leased out by appellant, and the income therefrom arising, applied to the discharge of the appellee's indebtedness to be incurred as above, and that appellant should not appropriate more of the income arising from rents, than the sum of $40 to the improvement and repairs of the premises in question. We say that these facts appear from the pleading and proof in the cause, as we have above stated. We shall not attempt an analysis of each, nor enter into an extended argument with the aim of establishing the correctness of our conclusions in respect to them.

Holding, as we do, that the deed, from appellee to Sparks, was without consideration, and that the one from Sparks to the appellant was executed at the instance of appellee, on the terms and conditions which we have just stated, which, in law, constitute it, to all intents, a mortgage, and in the hands of the appellant, a security for the sums actually paid by him for, and loaned to the appellee, we will now proceed to determine, from the pleading and evidence in the cause, whether those advances have been liquidated by the appellee; and if so, it will follow as a necessary consequence, that he is entitled to redeem the premises, and have the mortgage canceled.

Looking at the original bill, the answer and proof, we think it may be fairly concluded that, on the 18th July, 1854, when the hearing was had in the Court below, the appellant had paid debts for, and had advanced money to appellee, on account of the mortgage security, to the aggregate amount of $992 12. It does not appear, however, from any medium of evidence, when these payments were made; but, conceding that it was done at the date of the deed from Sparks to appellant, 5th January, 1847, he was entitled to interest on this amount from that time to the date of the hearing, 18th January, 1854, at the rate of ten per centum per annum. The interest on the advances and loan, from the time assumed as above to the date of decree, amounts to the sum of $617 47, which, added to the principal,

$992 12, constitutes the aggregate amount of the indebtedness of the appellee to the appellant, at the time the decree was rendered, the sum of $1609 59.

The evidence in reference to the value of the rents and profits of the lots and premises in question, is exceedingly conflicting, so much so, that we have had much difficulty in coming to a conclusion on the subject. Taking the evidence adduced at the hearing, in connection with the concessions of counsel made in their argument, we have fixed the annual rents of the premises in controversy at $400, which, computed from 5th January, 1847, to the date of the decree rendered by the Court below, a period of a little over seven years, will make the aggregate value of the rents, within that period, $2,800. Deducting the amount of advances made for, and the loan to the appellee by the appellant, will leave the amount of $1,190 41, without taking into the estimate the sum of $40, which the proof conclusively shows was paid out by the appellant for repairs and improvement of the premises, under the contract as established in this cause. Interest added on this amount for seven years, on the hypothesis that it was paid as soon as the mortgagee went into possession, will make the amount to be deducted from the decree on this account of principal and interest $68 00. Deducting the amount of $1,190 41, the difference between the sums advanced for, and loaned to the appellee, by appellant, and the accrued interest thereon, from the amount of $1,244 91, decreed by the Court to be paid by the appellant to the appellee, and we have the sum of $54 50, which, added to the value of the improvements and interest as above, makes the sum of $122 50, as the amount the decree rendered by the Court below, exceeds the true amount due by the appellant to the appellee, under the law and evidence in this cause. The decree for the appellee should have been for $1,122 41, instead of $1,244 91.

In making this estimate we have not taken into the account the interest, which might be supposed to accrue on the yearly rents of the premises. This we have not done for the reason that the appellee did not make the claim, in his bill or amendment, and because the evidence does not show that there was

any agreement as to interest on this account. Interest does not, ordinarily, accrue on such demands.

In the estimate we have made, nothing has been allowed to the appellant for improvements placed on the lots, beyond the $40 authorized to be made, for the reason that a mortgagee in possession, without special authority, will only be allowed for such improvements as are absolutely necessary for the support of the property, and to keep it from waste and damage. See *Sandon vs. Hooper*, 6 *Bea.* 246; *Nusom vs. Clarkson*, 4 *Hare*, 97; *Story's Equity*, sec. 1016 *V.; Moore vs. Caber*, 1 *John. Ch. R.* 385; 1 *Hoffman's Ch. R.* 352.

In *Sandon vs. Hooper*, LORD LANGDALE concluded by saying: " The mortgagee has no right to make it more expensive for the mortgagor to redeem, than may be required for the purpose of keeping the property in a proper state of repairs, and for protecting the title to the property." Having, previously, in the same case, said: " He has no right to lay out money in what he calls increasing the value of the property, which may be done in such a way as to make it utterly impossible for the mortgagor to redeem: that is, what has been termed, improving a mortgagor out of his estate."

The decree of the Court below, for the causes aforesaid, will be reversed, and this Court, under the Statute in such case, will proceed to render such decree, as the Circuit Court of Sebastian county should have rendered, in conformity herewith.

The decree is reversed, and a decree for $1,122 41 rendered for the appellee, in lieu of the decree of the Court below.

The costs of this Court will be paid by the appellee, and those of the Circuit Court of Sebastian county will be paid by the appellant, except so far as a part of them may, legitimately, be taxed to Sparks, the other defendant.

Except as to the amount, the decree of this Court will conform to the decree of the Court below.