Johnson and Another *v.* Cornett.

———————•———————

ᵀ⁻⁻ᴶNSON and Another *v.* CORNETT.

EJECTMENT.—ESTATE OF MORTGAGEE.—The rule, that a plaintiff in eject-
ment cannot recover where the title to the land is in a third person, does
not apply where the outstanding title is a mortgage.

ASSIGNMENT OF MORTGAGE.—The assignment or conveyance of the mort-
gaged premises by the mortgagee, without an assignment of the debt
secured by the mortgage, will pass no estate.

APPEAL from the *Ripley* Circuit Court.

GREGORY, J.—This case turns upon the question whether the quit-claim deed from *Shook* and wife to ·*Cornett,* passed

any estate to the latter. It is clear to a majority of the court that the estate of the mortgagee, in the mortgaged premises, cannot be set up as an outstanding title to defeat the mortgagor. We think it is correctly stated by Mr. HIL-LIARD, in his work on mortgages, that "the rule, that a plaintiff in ejectment cannot recover premises, the title to which is in a third person, does not apply where the outstanding title is a mortgage." 1 Hill. on Mort. 145.

Chancellor KENT, in his Commentaries, says: "The assignment of the interest of the mortgagee in the land, without an assignment of the debt, is considered to be without meaning or use." 4 Kent 194.

Mr. WASHBURN, in his work on "Real Property," says: "In *New York* and *New Hampshire*, on the contrary, it is held that a conveyance or assignment of the mortgaged premises, without specifically assigning the debt, or what is equivalent, would be void. It would pass no estate; any one holding, under such a deed, would be as to the mortgagor a trespasser. This is based upon the idea that the debt is the principal thing; that it cannot be detached from the interest in the land, and a subsequent assignment of the debt would pass the land, notwithstanding such prior deed." 1 Wash. 521. We think this is in accordance with the weight of modern adjudications, and is the logical result of principles long recognized in this State.

In *Givan* v. *Doe*, 7 Blackf. 210, the equitable interest in the mortgage debt passed by the assignment. It is true, in that case the doctrine is recognized that there may be a separation of the legal title to mortgaged premises, from the claim at law to the mortgage debt, but the question involved in the case at bar was not then before the court. The principle upon which the doctrine rests, that a quit-claim deed, from the mortgagee to a stranger, passes nothing, was recognized as early as 1838 in this State. *Blair* v. *Bass*, 4 Blackf. 539. The entire current of later decisions, as well as the legislation on the subject, has been in the same direction. In *Hough* v. *Osborne*, 7 Ind. 140,

STUART, J., in speaking for the court, says: "The only thing easily perceivable as to the transfer of the mortgage security without the notes, was its futility." Indeed many principles drawn from the technical relation between the mortgagor and mortgagee, as recognized at law, are, in modern times, yielding to good sense and the real interests of the parties.

The court below erred in overruling the motion of appellants for a new trial.

The judgment is reversed, with costs, and the cause remanded, with directions to grant a new trial, and for further proceedings.

FRAZER, C. J., *dissenting.*—This was a suit to recover the possession of real estate, and to quiet the title thereto. Upon the issue formed by a general denial, there was a trial and verdict for the defendant, and, over a motion for a new trial, judgment was rendered upon the verdict. The case is here upon the evidence.

The plaintiffs were the heirs at law of one *Thomas,* who held the land by letters patent from the *United States,* dated *August* 15, 1838. The land was unimproved and uninclosed, without buildings, and adjoining another tract upon which *Thomas* resided until his death, in 1846; and while he lived he took firewood and other timber from this land as he needed it. He had done so before the date of the letters patent. In *February,* 1840, he mortgaged the premises to one *Glasgow* to secure the payment of one hundred dollars, due *September,* 1842, for which he also executed his promissory note. The mortgage was in the form then common, and was silent as to the right of possession. On the 29th of *May,* 1845, *Glasgow* delivered the note and mortgage to one *Shook,* with a written assignment upon the latter, not under seal, reciting that the consideration of the assignment was "in part wherein said *Shook* is bound as security for me to *W. S. T. Cornett* in the sum of $127 67." This note and mortgage, with the assignment, were deposited

by *Shook* in the office of the clerk of the Circuit Court, and have the clerk's endorsement, "filed *July* 17, 1845." They were taken from that office to be offered in evidence in this cause. On the 21st of *October*, 1851, *Shook*, by the delivery of a deed without covenants, attempted to convey the land in fee simple to the defendant *Cornett*. The latter regularly paid the taxes from the date of that deed until the commencement of this suit, being, in the aggregate, $27 82. About the year 1858, *Cornett* sold some dead trees upon the land, which were removed in 1861. He subsequently sold, or used, two other decaying trees, and, about the time of the commencement of the suit, deadened several acres of the timber with a view to clearing the land.

We look upon the facts, that the note and mortgage were deposited in the clerk's office by *Shook*, and remained there until the trial of this cause, as of no importance whatever, save that they may tend to show that *Shook* never assigned them to *Cornett*. The evidence shows a good assignment in equity to *Shook*. Was there an assignment of them to *Cornett?* If *Shook* had been in possession as mortgagee, it may be that his deed to *Cornett* would have transferred to the latter the right to hold such possession under the mortgage, until the satisfaction of the debt which the mortgage was made to secure. But there was no evidence tending to show that *Shook* was ever in possession. That was a fact susceptible of proof, if it was true, and it cannot be assumed without proof. It is clear that *Thomas* held the possession until his death, in 1846. As the law stood at that time, the mortgagee could not recover the possession, even after the condition was broken, though it was otherwise when the mortgage was given. Rev. Stat. 1843, p. 459. The only inference which the law justifies, in the absence of proof, is that the heirs of *Thomas* continued the possession, after his death, until *Cornett* took possession. If it be conceded, as is argued, that the statute of 1843 only withheld a legal remedy formerly existing, and would not render a possession by the mortgagee wrongful if acquired peace-

ably, still it is insisted that *Cornett's* right to hold depends· upon the question whether, by virtue of the deed from *Shook,* he became assignee of the mortgage. Upon that question I differ from the majority of the court.

Consistently with the doctrine now most generally held as to mortgages, which regards the debt as the principal thing, and the mortgage merely as a security for its pay-- ment—a doctrine which has long prevailed in this court, and has the merit of regarding the substance of the trans- action rather than its mere form—it is not clear that a mortgagee can convey any estate in the mortgaged premises, and at the same time hold the debt which the mortgage was given merely to secure. *Reasoner* v. *Edmundson,* 5 Ind. 393; *Francis* v. *Porter,* 7 *id.* 213. There is high authority to· the effect that the mortgagee, not in possession, can trans- fer no interest in the land without assigning the debt. *Furbush* v. *Goodwin,* 5 Fost. (N. H.) 425. But this broad proposition is not in accordance with the common law, which regarded it as possible that the legal ownership of the estate in the land granted by the mortgage might be transferred without assigning the debt, though the estate thus transferred would be held merely in trust for the ben- efit of the holder of the debt, and this rule has been sanc- tioned by this court as late as 1844. *Givan* v. *Doe,* 7 Blackf. 210. When the mortgage was executed, in 1841, the legal effect of it was to convey to the mortgagee a right to the immediate possession of the land, and to hold such possess- ion until the debt was satisfied. This right it was not, per- haps, within the power of the legislature to take away; at any rate the statute of 1843 did not evince such a purpose; it merely withheld any remedy, by legal proceedings, to enforce the right. Nevertheless, a possession by the mort- gagee, peaceably obtained, it has been held, would be right- ful, and the mortgagor could not therefore maintain eject- ment against him. *Mickles* v. *Townsend,* 18 N. Y. 575; *Gil- lett* v. *Eaton,* 6 Wis. 30; *Tallman* v. *Ely, id.* 244; *Russell* v. *Ely,* 2 Black 575. If the mortgagee could defend his

possession under the mortgage, it would seem clear that the appellant, holding the same right in the land, though as trustee for the owner of the debt, could also defend, in the same way, as against the mortgagor, or the plaintiffs upon whom his estate has been cast by descent. Nor is it an answer to this course of reasoning to say that the appellant has no personal interest, being merely a trustee. His obligations as such are to his *cestui que trust*, and not to the plaintiffs. He holds in right of his *cestui que trust*.

*Cornett's* possession, it appears, began in 1858. This was before the statute of limitations had run against a suit for foreclosure. Inasmuch as a possession peaceably obtained by *Cornett* would, as we have seen, have been lawful, and could be defended under the mortgage, and there is an absence of proof as to how that possession was obtained, we must presume that it was lawful in its inception. If so, then it can be held by virtue of the mortgage, and the remedy of the plaintiffs is to redeem. The result thus reached answers the purposes of justice, and compels the plaintiffs to do equity. A different conclusion gives them the possession of the land discharged of the mortgage, for they have chosen to defer their suit until all remedy for the collection of the debt is barred by the statute of limitations. It is not overlooked that cases are abundant elsewhere not in accord with *Givan* v. *Doe, supra*. That case, however, was a faithful announcement of the law of this State as it was held at the date of this mortgage. *Doe* v. *Mace*, 7 Blackf. 2; *Butler* v. *Doe*, *id.* 247. It was a rule of property then existing here, upon the faith of which contracts were made. Since then the law of mortgages, in our State, has been greatly changed by statute. It is not likely to be of public advantage, now to declare the law to have been different in 1841 from what it was then authoritatively adjudged to be. No good purpose can be accomplished by it, and in the case before us it would plainly result in injustice. Such are my own views of the last question.

The judgment of the majority of the court, from which

I dissent, and the reasons upon which they proceed, are given in an opinion by Justice Gregory. The question, owing to our legislation for more than twenty years past, is not at this day of much practical importance, and I have therefore contented myself with a very brief discussion of it.

E. P. Ferris, T. A. Hendricks, O. B. Hord and A. W. Hendricks, for appellants.